# Margaret Culbertson et al., Plffs. in Err., v. Henry P. Duncan et al.

In an action of ejectment where the matter in dispute was a boundary line, and it appeared that the line claimed by plaintiffs as the true one was the line designated by the original common owner of the tracts now owned by plaintiffs and defendants respectively, when the land owned by plaintiffs was sold to plaintiffs' grantors; that said original owner had several times pointed out and declared this to be the line, and that the plaintiffs' grantors and their successors had always claimed to this line, and continuously occupied the property under this claim for more than twenty-one years—it was *held* that such line was the true one.

(Argued May 24, 1887.  Decided May 7, 1888.)

January Term, 1886, No. 396, E. D., before MERCUR, Ch. J., GORDON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.  Error to the Common Pleas of Warren County to review a judgment in favor of plaintiffs in an action of ejectment, September term, 1882, No. 87.  Affirmed.

This is an action of ejectment brought, nominally, to recover 165 acres and 136 perches and allowance of land situate in Brokenstraw township, Warren county.  Both parties admit title in one James A. Alexander originally, and the conveyances and inheritances through which the parties respectively derive title from him, the plaintiffs to said western part and the defendants to that portion of the eastern part which adjoins said western part, are not disputed.

The real amount of land in dispute is but a small portion of the land described in the plaintiff's precipe.  The dispute grows out of a disagreement as to the true boundary of the premises, as made by said Alexander and one Ransom Babcock, to whom Alexander sold the land alleged by plaintiffs to be properly described in their precipe, in the year 1836 or the year previous.

Plaintiffs claim that the west line, as ascertained by their surveyors and shown to have been run or rerun at about the time of the sale from Alexander to Babcock, is in fact the true

west line of the Alexander tract, or at least was treated as such by the parties in making their survey of the land sold, and hence forms the true base line, by which the north and east line of the 100-acre piece are to be determined, by running the one at right angles and the other parallel to it.

Defendants claim that the original north line of the Alexander tract, as ascertained by their surveyors, and apparently run and marked on the ground at the time the original tract was surveyed by the deputy surveyor in 1831, is the true base line, by which the east and south lines of the 100-acre piece are to be determined by running the one at right angles and the other parallel to it.

The starting point at the northwest corner of the 100-acre piece is accepted by both parties as the true corner and starting point of the survey; and the line running east therefrom, as claimed by plaintiffs, bears more to the north than the line as claimed by the defendants.

The case was referred to Charles Dinsmoor, Esq., as referee, who reported as follows:

## Findings of Fact.

1. That on November 19, 1831, there was surveyed by the deputy surveyor for Warren county, to James A. Alexander, 309 acres and 92 perches of land in Brokenstraw township, Warren county, upon his settlement and improvement, which survey was duly returned into the office of the surveyor general of the state; and that by virtue of his title thereunder he was, in the years 1835 and 1836, in the possession and ownership of the same, which included the land described in the precipe in this case;

2. That in the year 1835 or 1836 he bargained and sold to Ransom Babcock: First, 100 acres and allowance from the northwest corner of the tract above mentioned, and subsequently a piece of land lying between said 100 acres and the south line of his tract—the two pieces comprising the entire west end of the tract;

3. That at the time the bargain was made for the last-mentioned piece, Alexander and Babcock surveyed the north line of the 100 acres and the eastern and southeastern lines of both

pieces, marking the latter two lines as the division lines between them and establishing the northeast corner of the 100-acre piece;.

4. That the purchase price of the two pieces was all paid by Babcock, and that on the 4th day of August, 1836, James A. Alexander and Archibald Alexander conveyed to Babcock the piece of 100 acres and allowance. That on the 10th day of January, 1842, Archibald Alexander, by a deed made with the acquiescence of James A. Alexander and witnessed by him, conveyed to Babcock the other piece;

5. That, as shown by the deeds, Archibald Alexander became interested with James A. Alexander in the ownership of the land so sold and conveyed, prior to the date of the first-mentioned deed; and the holder of the title to the second piece sold, before the deed for it was made; but when or how he acquired his rights in the same does not appear;

6. That the two deeds were intended to convey the land lying westward of the lines run and marked upon the ground by Alexander and Babcock as their division lines; and that as the starting point of the description contained in the second deed is the southeast corner of the piece described in the first, and its last course along the entire south line of the same to said place of beginning, the two descriptions taken together comprise one piece of land, conforming in its general outlines to the survey made by James A. Alexander and Babcock;

7. That the title to the lands so sold and conveyed to Ransom Babcock became by virtue of divers mesne conveyances and inheritances vested in the plaintiffs before the commencement of this suit. And that the plaintiff and those under whom they claim title, from said Ransom Babcock down, have held continuous and exclusive possession of the premises from the date of the purchase by him to the bringing of this suit;

8. That Ransom Babcock and those claiming title under him, down to and including the plaintiffs, through their agent, Dr. Wm. A. Irvine, have always claimed, as being upon the true line as run, a thorn tree and a rock, now removed, and a pine tree, the stump of which is now standing near the bath house on the lands of defendants; that such claim was recognized and encouraged by James A. Alexander, in his lifetime, and these landmarks pointed out by him to several of them as marking the boundary between the land so sold by him to Babcock and the unsold portion of his original tract;

9. That in making the survey referred to in the third finding of fact, Alexander and Babcock began at a corner witnessed by an oak, and being the northwest corner of the Alexander tract, near the corner of the Hugh Wilson tract, and some 10 rods south of the corner of John Clark's land, and marked said corner as the corner of the land so sold to Babcock;

10. That they fixed the northeast corner of the land so sold to Babcock at a post, witnessed by a white oak and a pepperidge, located, as shown by the present readings of the compass, south 88° 13' east 131 41/100 rods from said northwest corner of the tract;

11. That about the same time the west line of the tract was run or rerun and marked upon the ground, but whether by or for Alexander and Babcock or either of them is not shown by the testimony before the referee. But the referee finds that this west line, as so run or rerun, and marked upon the ground, was the one by which the west boundary of the lands sold by Alexander to Babcock was defined, and is the true western boundary of the same. That said line runs, as by the compass as now applied to the lines, south 1° 22' west;

12. That the eastern line of the 100 acres and its prolongation 10½ rods south, were run on the ground at right angles with the north, and parallel with the west, line, and terminated at or somewhat easterly of the point fixed by plaintiffs' surveyors, Smith, Cornelius, Strong, and Mead;

13. That from the point so fixed, the line run by said Alexander and Babcock ran southeasterly, marked by a thorn tree and a large rock, 19 perches to a post; and that the course of said line now reads south 46° 30' east;

14. That from the last-mentioned point the line run by said Alexander and Babcock ran by a course which now reads by the compass south 26° 30' east, 41 perches to a post; and that the pine tree, the stump of which now stands near the bath house on defendants' land, was in the course of said line, and was marked for a line tree;

15. That said line from said last-mentioned point ran by a course which would now read south 58° 30' west, 26 rods to the line of the Calender Irvine lot.

## Conclusions of Law.

1. That the plaintiffs have shown a good title in themselves to the land sold by James A. Alexander to Ransom Babcock;

2. That the line as run and marked upon the ground by Alexander and Babcock together, at the time of the purchase and sale, is binding upon both of them; and the rights of the parties are to be determined by ascertaining where that line was marked, except so far as the plaintiffs may have title by statute of limitations;

3. The proof being plenary that the line run by Alexander and Babcock was marked by a thorn tree, a large rock, and a pine which stood near the site of the present bath house; that Babcock and his successors always claimed to this line; that Alexander himself several times pointed out and declared these to be the true landmarks, and that Babcock and his successors in title for more than twenty-one years continuously occupied the property under this claim, the plaintiffs are entitled to recover to the line marked by said thorn, rock, and pine.

The opinion of the referee was as follows:

The referee finds that upon the whole case the plaintiffs are entitled to recover so much of the land described in the writ of ejectment as is described as follows:

"Beginning at a post with witnesses marked in 1831 and 1836, the northwest corner of the James A. Alexander tract; thence south 88° 13' east 131 1/10 perches to a post marked with witnesses in 1836; thence south 1° 30' west 130 rods to a post; thence by the same course 10½ rods to a post; thence south 46° 30' east 19 perches to a post; thence south 26° 30' east 41 rods to a post; thence south 58° 30' west 26 perches to the Calender Irvine lot; thence along the north line of said Calender Irvine lot 88 perches to a post; thence north 66° west 62 perches to the west line of the Alexander tract; thence north 1° 22' east 174 6/10 perches to the place of beginning."

The courses above being the readings of the compass used in the survey made by Smith, Cornelius, and Strong, surveyors, in the fall of 1884. And it is the opinion of the referee that judgment should be entered in favor of the plaintiffs and against defendants for the land above described, with costs. All which is respectfully submitted.

Exceptions to the referee's report were overruled and judg‑ment entered in favor of plaintiffs.

The assignments of error specified, *inter alia,* the findings of fact by the referee numbered 6, 7, 10, 11, and 12, the second conclusion of law, and the general finding in favor of the plain‑tiffs.

*R. Brown,* for plaintiffs in error.—A party who claims under a contract of sale is not protected by the statute of limitations. Harris v. Richey, 56 Pa. 401.

After a person has parted with his interest his declarations are not evidence to impeach the title derived from him. Packer v. Gonsalus, 1 Serg. & R. 526; McIldowny v. Williams, 28 Pa. 492.

*Charles H. Noyes* and *D. I. Ball* for defendants in error.

PER CURIAM:

The findings of fact by the referee and his conclusions of law are so clear, accurate, and well stated that we can do nothing better than affirm the judgment on his opinion.

The judgment is affirmed.